Case No. 25-1357

UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT

_____

MAUREEN NOLAN

Plaintiff/Appellant

v.

PORTER MCGUIRE KIAKONA, LLP

Defendant/Appellee

_____

On Appeal from United States District Court for the District of Hawai'i
Case No. 1:23-00271 SASP-WRP
Honorable District Court Judge Shanlyn A. S. Park

_____

**APPELLEE'S ANSWERING BRIEF**

_____

**GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP**

DEIRDRE MARIE-IHA AND DAVID J. HOFTIEZER
999 BISHOP STREET, SUITE 1600
HONOLULU, HAWAI'I 96813
(808) 547-5600 (PHONE) • (808) 547-5880 (FAX)

**ATTORNEYS FOR DEFENDANTS-APPELLEES
PORTER MCGUIRE KIAKONA, LLP**

# TABLE OF CONTENTS

INTRODUCTION...................................................................1

JURISDICTIONAL STATEMENT.................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW..............................4

PERTINENT STATUTES AND COURT RULES....................5

STANDARD OF REVIEW ...............................................9

COUNTERSTATEMENT OF THE CASE......................11

    A.    This Dispute is Narrow and Limited to the Counterclaim...........11

    B.    The Complete Background on the Unit Shows it was Primarily a Commercial Rental Property ...................12

    C.    Nolan Admittedly Owed the Unpaid Fees to the AOAO.............16

    D.    Porter McGuire's Limited Involvement and Contact with Nolan...............17

    E.    Underlying Federal Lawsuit................................18

SUMMARY OF ARGUMENT...........................................21

    A.    The Scope of Nolan's Claims is Narrow.........................21

    B.    The Counterclaim is Not Actionable Under the FDCPA .............21

    C.    Nolan's Unpaid Fees are Not Protected by the FDCPA...............21

    D.    Nolan Failed to Prove an Actionable Misstatement of Debt........22

    E.    Nolan's IIED Claim is Devoid of Legal or Factual Support........22

ARGUMENT ....................................................................23

    A.    Nolan's Claims are Narrow and Limited to the Counterclaim ..................23

**B.** **The District Court is Correct that the Counterclaim is Not an Actionable Communication Under the FDCPA**......................**24**

    1.    FDCPA does not apply to pleadings served on counsel..........24

    2.    Nolan cannot circumvent and ignore controlling law.............27

**C.** **The District Court is Correct that FDCPA Protections Do Not Apply to Nolan's Commercial Debt** ........................**30**

    1.    The FDCPA Only Applies to "Consumer Debts" ..................31

    2.    The District Court properly examined the "transaction" as a whole, including the actual use of the Unit ......................32

    3.    Nolan's failed to meet her burden of proof.............................36

**D.** **Nolan Failed to Offer Evidence of the Alleged FDCPA Violation** ........................................................**38**

    1.    Nolan failed to establish that the AOAO's Counterclaim was materially misleading to the least sophisticated debtor............................................................................................39

**E.** **Nolan's IIED Claims are Without Legal or Factual Support**......**43**

**CONCLUSION**..................................................................................**49**

**STATEMENT OF RELATED CASES**

**CERTIFICATE OF COMPLIANCE**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Applin v. Deutsche Bank Nat. Tr.*,
  No. CIV.A. H-13-2831, 2014 WL 1024006
  (S.D. Tex. Mar. 17, 2014)......................................................................45

*Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*,
  No. CIV. 13-00669 HG-BMK, 2014 WL 2761744
  (D. Haw. June 18, 2014)................................................45, 47, 48, 49

*Bloom v. I.C. Sys., Inc.*,
  972 F.2d 1067 (9th Cir. 1992) .........................................31, 32, 33, 34

*Brown v. Arizona*,
  82 F.4th 863 (9th Cir. 2023) ..............................................................46

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)......................10

*In re Cherrett*,
  873 F.3d 1060 (9th Cir. 2017) ...........................................................35

*Donohue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ................................... 4, 21,25, 26, 28, 30, 31, 40

*Early Detection Ctr., P.C., v. New York Life Ins. Co.*,
  403 N.W.2d 830 (Mich. Ct. App. 1986)............................................45

*Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir.1997), *as amended* ................................32, 37

*Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*,
  859 Fed. Appx. 102 (9th Cir. 2021) (unpublished) ....................33, 34

*Goran Pleho, LLC v. Lacy*,
  144 Hawai'i 224, 439 P.3d 176 (2019)..............................................43

*Guerrero v. RJM Acquisitions LLC*,
  499 F.3d 926 (9th Cir. 2007) ........................... 4, 9, 21, 25, 25, 27, 28, 29, 30, 40

*Haddad v. Alexander, Zelmanski, Nanner & Fioritto, PLLC*,
689 F.3d 290 (6th Cir. 2012) ...............................................................33

*Hammer v. Slater*,
20 F.3d 1137 (11th Cir. 1994) .............................................................45

*Hansen v. U.S.*,
7 F.3d 137 (9th Cir. 1993) ...............................................11, 13, 32

*Heim v. California Fed. Bank*,
828 A.2d 129 (Conn. App. Ct. 2003) ...............................................45

*Heintz v. Jenkins*,
514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) ...........24, 25

*Isobe v. Sakatani*,
127 Hawaiʻi 368, 279 P.3d 33 (Ct. App. 2012)..................................46

*Johnson v. Wells Fargo Home Mortg., Inc.*,
No. 3:05-CV-0321-RAM, 2007 WL 3226153
(D. Nev. Oct. 29, 2007) .......................................................................35

*Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*,
113 Hawaiʻi 251, 151 P.3d 750 (2007)................................................46

*In re Kelly*,
841 F.2d 908 (9th Cir. 1988) ..............................................................33

*Kersh v. Manulife Fin. Corp*,
No. 09-00049, 792 F.Supp.2d 1111 (D. Hawaii May 31, 2011) .......23

*Kitamura v. AOAO of Lihue Townhouse*,
No. CIV. 12-00353 LEK, 2013 WL 1398058 (D. Haw. Mar. 29,
2013) .....................................................................................................35

*Mahone v. Lehman*,
347 F.3d 1170 (9th Cir. 2003) ............................................................37

*Malnes v. City of Flagstaff*,
710 F. App'x 764 (9th Cir. 2018).......................................................45

*Miller v. Glenn Miller Productions, Inc.*,
454 F.3d 975 (9th Cir. 2006) ..............................................................10

iv

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) ...............................................................36

*Rose Court, LLC v. Select Portfolio Servicing, Inc.*,
119 F.4th 679 (9th Cir. 2024) ...............................................9, 23, 28

*Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc.*,
76 Hawai'i 454, 879 P.2d 1037 (1994)...............................................22, 44

*Rotkiske v. Klemm*,
589 U.S. 8, 140 S.Ct. 355, 205 L.Ed.2d 291 (2019)...........................23

*Sandoval v. Cnty. of San Diego*,
985 F.3d 657 (9th Cir. 2021) ...................................................................9

*Slenk v. Transworld Sys., Inc.*,
236 F.3d 1072 (9th Cir. 2001) ..........................................4, 9, 21, 31, 33, 34, 35

*Takaki v. Allied Machinery Corp.*,
87 Hawai'i 57, 951 P.2d 507 (App.1998)...........................................44

*Tourgeman v. Nelson & Kennard*,
900 F.3d 1105 (9th Cir. 2018) ...............................................................38

*Velasco v. Sec. Nat. Mort. Co.*,
2011 WL 2117008 ..................................................................45, 47, 49

*Velasco v. Sec. Nat. Mort. Co.*,
No. CV 10-00239...................................................................................47

*Young v. Allstate Ins. Co.*,
119 Hawai'i 403, 198 P.3d 666 (2008)................................................44

**Statutes**

15 U.S.C. § 1692a .......................................................................................5

15 U.S.C. § 1692a(3) ................................................................................31

15 U.S.C. § 1692e ....................................................................5, 18, 39, 40

15 U.S.C. § 1692e(2) ................................................................................39

15 U.S.C. § 1692f......................................................................6, 18, 39, 40

15 U.S.C. § 1692f(1) ...........................................................................39

15 U.S.C. § 1692k(d) ..........................................................................23

28 U.S.C. § 1291 ...................................................................................3

28 U.S.C. § 1367 ...................................................................................3

28 U.S.C. § 1746 ...................................................................................9

HRS § 657-7 ...................................................................................6, 23

**Rules**

Fed. R. App. P. 4 ...................................................................................3

Fed. R. Civ. P. 56 ..................................................................................6

Fed. R. Civ. P. 56(c) ....................................................................7, 9, 10

Fed. R. Civ. P. 56(e) ...........................................................................36

Fed. R. Evid. 801 .............................................................................8, 36

Fed. R. Evid. 801 .............................................................................8, 36

Haw. R. Civ. P. 13(a) ...................................................................8, 18, 48

Haw. R. Prof. Cond. 1.4(a)(6) ............................................................27

Haw. R. Prof. Cond. 1.16(d) ...............................................................27

United States District Court for the District of Hawai'i, LR 7.5 .........9, 40

U.S. Ct. of App. 9th Cir. Rule 36-3(a) ................................................33

**Other Authorities**

Restatement (Second) of Torts § 46 comment d....................................44

# INTRODUCTION

Since 2009, Appellant Maureen Nolan admittedly owed unpaid maintenance fees and assessments for Unit 110 (the "Unit") at the Mokuleia Sands condominium in Waialua, Hawai'i. Nolan characterizes the Unit as her brother's permanent residence, despite admitting she used the Unit as an income-generating rental property for 16 of the last 18 years. The Association of Apartment Owners at Mokuleia Sands ("AOAO") tried, for roughly a decade, to negotiate and collect the unpaid fees and, in December 2021, Nolan sued the AOAO in state court to dispute and request a forensic accounting of her unpaid fees.

In response to Nolan's suit, the AOAO's counsel, Appellee Porter McGuire Kiakona, LLP, filed the AOAO's compulsory Counterclaim for the unpaid fees. Porter McGuire served the Counterclaim directly on Nolan's counsel. Nolan reacted by suing Porter McGuire in the District Court of the District of Hawai'i for preparing and serving the compulsory Counterclaim, which she alleged contains a material misstatement of her debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), was an abuse of process, and was intentional infliction of emotional distress ("IIED"). When Porter McGuire and Nolan both moved for summary judgment, the District Court correctly followed this Court's precedent and found that the Counterclaim was not actionable under the FDCPA and that Nolan's debt was not a consumer debt protected by the FDCPA. The District Court

also correctly applied Hawaiʻi law when it held that Porter McGuire acted properly and not so far beyond all possible bounds of decency by representing the AOAO in response to Nolan's state lawsuit and filing a compulsory Counterclaim regarding Nolan's challenge to the unpaid fees. Nolan failed to show that a genuine issue of material fact existed for any of her claims and the District Court correctly entered summary judgment against her.

Nolan's appeal is without merit. The District Court properly applied Ninth Circuit precedent that a pleading served directly on opposing counsel (like the Counterclaim) does not constitute an actionable communication under the FDCPA. CM/ECF 86, 1-ER-10-13. As this Court has explained, the FDCPA's purpose of protecting unsophisticated debtors is not applicable when a debtor, like Nolan, retains counsel to field all communications on her behalf. The District Court also correctly followed Ninth Circuit precedent to determine that Nolan's unpaid fees were not protected by the FDCPA because they were not incurred primarily for a personal, family, or household purpose; reviewing the transaction as a whole, Nolan admitted the Unit was used, exclusively, to generate income since at least May 2008 and failed to prove the Unit was acquired for her late brother, who died houseless in 2013. *Id.* at 13-16. Finally, the District Court properly dismissed Nolan's tort claims because Nolan failed to show a genuine dispute of material fact that Porter McGuire acted improperly or outrageously by filing a compulsory

2

Counterclaim, on behalf of its client, in response to Nolan's lawsuit about her unpaid fees. *Id.* at 16-19.

Nolan did not and cannot meet her burden of proof. The District Court's Judgment and Order (1) Granting Porter McGuire's Motion for Summary Judgment and (2) Denying Nolan's Motion for Partial Summary Judgment should be affirmed.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the underlying lawsuit because, regardless of the merits, Nolan alleged a violation of the federal FDCPA. 28 U.S.C. § 1291. The District Court had supplemental jurisdiction over Nolan's state tort claims because they were based on the same factual allegations. 28 U.S.C. § 1367.

There is no dispute this Court has jurisdiction over the present appeal pursuant to 28 U.S.C. § 1291, as the District Court's February 3, 2025 judgment properly disposed of all claims and parties in the underlying federal lawsuit. Nolan filed her Notice of Appeal on February 28, 2025, and within 30 days of the District Court's judgment. Fed. R. App. P. 4.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The District Court properly applied this Court's controlling precedent, as well as controlling Hawaiʻi law, in granting summary judgment for Porter McGuire and against Nolan's claims. That said, Nolan raises the following issues:

A.      Whether the District Court properly applied Ninth Circuit precedent set forth in *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) and *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) to hold that a Counterclaim, served on Nolan's counsel, is not an actionable communication under the FDCPA. CM/ECF 86, 1-ER-10-13.

B.      Whether the District Court correctly followed *Slenk v. Transworld Sys., Inc.,* 236 F.3d 1072 (9th Cir. 2001) by examining the transaction as a whole, including Nolan's intent for and actual use of the Unit, in holding that Nolan's unpaid fees were not incurred primarily for a personal, family, or household purpose. *Id.* at 13-16.

C.      Whether the District Court properly found that, with regards to Nolan's motion for partial summary judgment, that Nolan failed to present any evidence that the Counterclaim contained an alleged material misstatement of her unpaid fees or to demonstrate that a genuine dispute of material fact exists for trial.

D.      Whether the District Court properly applied controlling Hawaiʻi law to hold that Porter McGuire did not act outrageously or outside all bounds of

4

decency by representing the AOAO in the state court lawsuit filed by Nolan and, specifically, by filing and serving the AOAO's compulsory Counterclaim on Nolan's counsel. *Id.* at 16-19.

## PERTINENT STATUTES AND COURT RULES

### United States Code Annotated – Relevant Portions of 15 U.S.C. § 1692a

As used in this subchapter--

…

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

…

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

### United States Code Annotated – Relevant Portions of 15 U.S.C. § 1692e

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 . . .

(2)   The false representation of--

   (A)  the character, amount, or legal status of any debt; or

   (B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

….

**United States Code Annotated – Relevant Portions of 15 U.S.C. § 1692f**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

**Hawai'i Revised Statutes – Relvant Portions of HRS § 657-7**

Damage to persons or property. Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13.

**Federal Rules of Civil Procedure – Relevant Portions of Rule 56**

(a)  Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
. . .

(c)  Procedures.

(1)  *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)  *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)  *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.

(4)  *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d)  When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)  defer considering the motion or deny it;

(2)   allow time to obtain affidavits or declarations or to take discovery; or

(3)  issue any other appropriate order.

(e)  Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)  give an opportunity to properly support or address the fact;

(2)  consider the fact undisputed for purposes of the motion;

(3)  grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or

(4)  issue any other appropriate order.

7

**Federal Rules of Evidence – Relevant Portions of Rule 801**

(a) Statement. "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

(b) Declarant. "Declarant" means the person who made the statement.

(c) Hearsay. "Hearsay" means a statement that:

   (1) the declarant does not make while testifying at the current trial or hearing; and

   (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

**Federal Rules of Evidence – Relevant Portions of Rule 802**

Hearsay is not admissible unless any of the following provides otherwise:

   • a federal statute;

   • these rules; or

   • other rules prescribed by the Supreme Court.

**Hawaiʻi Rules of Civil Procedure – Relevant Portions of Rule 13(a)**

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

**Local Rules of Practice for the United States District Court for the District of Hawaiʻi (the "Local Rules") – Relevant Portions of Local Rule 7.5**

> Factual contentions made in support of or in opposition to any motion shall be supported by affidavits or declarations, when appropriate under the applicable rules. Affidavits and declarations shall contain only facts, shall conform to the requirements of Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746, and shall avoid conclusions and argument. Any statement made upon information or belief shall 9 specify the basis therefor. Affidavits and declarations not in compliance with this rule may be disregarded by the court.

## STANDARD OF REVIEW

Nolan is correct that the District Court's Order is reviewed *de novo*. *Guerrero*, 499 F.3d at 932–33 ("We review de novo a district court's interpretation of the [FDCPA], and a district court's ruling on cross motions for summary judgment.") (citing to *Romine v. Diversified Collection Serv., Inc.,* 155 F.3d 1142, 1145 (9th Cir.1998) and *Slenk,* 236 F.3d at 1074); *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (same). However, Nolan did not explain that "[e]videntiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion. . . ." *Sandoval*, 985 F.3d at 665 (quoting *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007). Also, Courts of Appeals generally "will not consider arguments raised for the first time on appeal, although [they] have discretion to do so." *Rose Court, LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 688 (9th Cir. 2024) (quoting *El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000)).

Nolan also declined to provide the standard for summary judgment, which is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of establishing that there is no genuine issue of material fact lies with the moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A fact is material if it could affect the outcome of the suit under governing substantive law. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

When the moving party bears the burden of proof at trial, it must establish "the absence of a genuine issue of material fact on each issue material to its case." *Miller*, 454 F.3d at 987 (quoting *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)) (cleaned up).

When the non-moving party bears the burden of proof at trial, the moving party may meet its burden by pointing out the absence of evidence from the non-moving party, such as that the non-moving party cannot produce admissible evidence on an essential element of their claim. *Celotex*, 477 U.S. at 323; *Miller*, 454 F.3d at 987. The "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Miller*, 454 F.3d at 987-88

(quoting, Fed. R. Civ. P. 56(e)); *see also Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.") (citing *United States v. 1 Parcel of Real Property,* 904 F.2d 487, 492 n. 3 (9th Cir. 1990)). Summary judgment will be entered against the non-moving party if it does not present such specific facts. *Id.*

## COUNTERSTATEMENT OF THE CASE

### A. This Dispute is Narrow and Limited to the Counterclaim

The scope of the present dispute is limited to analysis of the compulsory Counterclaim Porter McGuire filed on August 19, 2022, on behalf of its client, the AOAO. 2-ER-43 at ¶¶ 24-26 (Nolan identifies Counterclaim as sole basis of claims against Porter McGuire); *see also* 1-ER-7 (confirming Nolan, through counsel, acknowledged her Complaint is limited to the counterclaim). Porter McGuire filed the Counterclaim after Nolan sued the AOAO in the Circuit Court for the First Circuit of the State of Hawai'i (the "State Litigation"). 1-SER-146-58 (State Complaint); 2-SER-436-86 (Counterclaim).[1] Nolan admits she owed unpaid fees

---

[1] Nolan purports to include the Counterclaim in her Excerpts of Record. *See* Nolan's Excerpts of Record – Index Volume at 2 (identifying Counterclaim [ECF 44-3] as 2-ER-47-95). However, the Counterclaim in Nolan's Excerpts of Record is ***not complete*** and is different than what she provided to the District Court; it does not contain the critical and dispositive Certificate of Service that the Counterclaim was ***served on Nolan's counsel and not Nolan, herself.*** *Compare* 2-ER-95 *with* 3-SER-605-06 (last pages of complete copy of Nolan's Exhibit One [ECF 44-3]).

but sued the AOAO to determine *how much* she owed. 2-ER-266 at ¶ 12; 1-SER-156 (requesting forensic accounting of unpaid fees); 1-SER-216, line 13 to 1-SER-217, line 16 (confirming Nolan filed State Litigation for court to determine what she owed); 1-SER-248, line 6 to 1-SER-250, line 24 (same); *see also* 1-SER-206, line 2 to 1-SER-207, line 4 (admitting unpaid fees accumulated between 2009 and a 2012 bankruptcy); 2-SER-489-90 (documenting Nolan paid "delinquent AOAO dues" in 2023). Despite that, Nolan still claims the Counterclaim miscalculated her debt, even though she offers no actual evidence or accounting of the alleged misstatement; her allegations are based on assumption and speculation, as Nolan freely and repeatedly admits she does not know how much she owed to the AOAO. 2-ER-41 at ¶ 15 (stating "I do not understand how the amounts demanded were calculated"); 2-ER-43 at ¶ 26 (claiming "[t]he amount demanded in the Counterclaim is particularly confusing"); *see also* 2-SER-500, 521 (amount owed is "incalculable"); 2-SER-522 ("No one knows the correct balance.").

## B. The Complete Background on the Unit Shows it was Primarily a Commercial Rental Property

Nolan argues her unpaid fees are a consumer debt because she inherited her mother's alleged intent for the Unit. Mary Nolan (Appellant Nolan's mother) purchased the Unit in around 2003. 1-SER-293 (Mary recorded title in April 2003); 1-SER-224, lines 9-14 (confirming same). Nolan claims, through inadmissible hearsay, that Mary purchased the Unit for Nolan's brother, Dennis Nolan, who

allegedly could not support himself. 1-SER-184 (Nolan Depo.), line 24 to 1-SER-185, line 17; *id.* at 195, lines 3-8; *id.* at line 22 to 1-SER-255, line 15; 2-ER-38 (Nolan Decl.) at ¶¶ 3-4; *see also* 1-ER-12 (District Court did not rely on inadmissible hearsay evidence as to Mary's intent). Nolan claims she visited the Unit several times but admittedly never lived in the Unit or used the Unit as her residence. 1-SER-164 (Nolan Depo.), line 21 to 1-SER-165, line 9; *id.* at 167, lines 4-15; *id.* at 214, line 14 to 1-SER-215, line 4; 1-SER-266 (discovery response) at Resp. 1. Instead, Nolan was a resident of Washington State for the last 30 years. *Id.*

In August 2006, Mary added Nolan to title as a tenant in common. 1-SER-278 (deed recorded September 7, 2006); 1-SER-186 (Nolan Depo.), line 20 to 1-SER-189, line 9 and *id.* at 193, lines 2 to 14 (confirming tenancy in common). Later, on October 6, 2006, Nolan and Mary recorded a deed transferring title to Nolan, alone. 1-SER-285 (second deed). Both transfers were for "$0," though Nolan claims she took out a loan on the Unit after she held title and gave the borrowed money to Mary. 1-SER-293 (Title Report); 1-SER-223 (Nolan Depo.), line 5 to 225, line 13 (confirming dates in Title Report and discussing alleged use of loan). Nolan did not, however, offer any documents or evidence to support her allegations and claims. 1-SER-144 (Decl. of Counsel) at ¶ 27.

According to Nolan, Mary continued to be responsible for expenses, maintenance fees, and other costs[2] on the Unit even after Nolan held title. 1-SER-181 (Nolan Depo.), lines 9-19; *id.* at 251, lines 3-25; *see also* 2-ER-39 (Nolan Decl.) at ¶ 6 (Mary continued to provide financial support until her death). After Mary passed away unexpectedly on November 27, 2006, however, Nolan became responsible for the Unit's maintenance fees and expenses. 1-SER-178, lines 18-25 (discussing Mary's passing); *id.* at 199, line 14 to 1-SER-200, line 17; 2-ER-39 (Nolan Decl.) at ¶ 6.[3]

Nolan insists her brother, Dennis, lived in the Unit, rent free and consistent with her mother's alleged wishes, until sometime in 2008. 2-ER-39 (Nolan Decl.) at ¶ 8; 1-SER-276 (Interrogatory Response) at Resp. 16; 1-SER-199 (Nolan Depo.), lines 23-25. However, Nolan never supported her claims with evidence; Nolan did not produce any tax returns showing how the Unit was managed, any bank account statements showing who paid for expenses and/or rent for the Unit,

---

[2] Pursuant to the applicable Governing Documents, the Unit's owner had to pay maintenance fees and other assessments to the AOAO. 2-ER-266 at ¶ 11; 1-SER-253 (Nolan Depo.) at lines 6-21 (admitting obligation to comply with the AOAO's Bylaws)2-SER-356, 2-SER-372-75, 2-SER-400 at Section 1(k)(1), 2-SER-402 at Art. V, Section 1, 2-SER-406 at Art. V, Section 6 (authorizing AOAO to set maintenance fees, issue assessments, and enforce and collect same).

[3] Nolan failed to produce documents evidencing what expenses Mary covered or when Nolan took over responsibility for the Unit's maintenance. 2-SER-350-53 at Resp.10-14 (response to discovery requests); 1-SER-144 (Decl. of Counsel) at ¶ 27 (documenting Nolan's lack of documentary evidence).

14

lease agreements, or any of the emails, text messages, or witness testimony that would normally be used to evidence a tenancy or family-wide support for an adult sibling. 1-SER-197 (Nolan Depo.), line 22 to 1-SER-198, line 15 (tax records were requested, but not produced); 2-SER-350-53 at Resp.10-14 (requests for records); 1-SER-144 (Decl. of Counsel) at ¶ 27 (documenting Nolan's lack of documentary evidence). This means that Nolan's alleged initial use of the Unit is unsupported.

Nolan testified she began asking Dennis to pay rent for the Unit in 2008. 1-SER-119 (Nolan Depo.), line 14 to 1-SER-120, line 9; *id.* at 227, lines 6-21. When Dennis allegedly could not pay rent (more hearsay), Nolan asked him to move out. *Id.* at 226 (Nolan Depo.), line 20 to 1-SER-227, line 21; 2-ER-266 (Complaint) at ¶ 8; 2-ER-39 (Nolan Decl.) at ¶ 8. This left Dennis houseless. *Id.*; *see also* 2-SER-432-33 (reporting Dennis was still houseless in 2013).

Regardless, from at least May 23, 2008 onward, Nolan admittedly used the Unit exclusively as an income-generating rental property. 1-SER-200, line 17 to 1-SER-204, line 1; 1-SER-276, Resp. Nos. 16-17 (detailing continuous rental through professional management). Dennis, meanwhile, remained houseless until his passing in 2013. 2-SER-432-33 (reporting police sought information about Dennis, who was killed in a cave where he was living); 1-SER-183, line 11 to 1-SER-184, line 7 (confirming Dennis was the houseless man found in 2013).

### C. Nolan Admittedly Owed the Unpaid Fees to the AOAO

Nolan admits that, beginning in 2009, she owed unpaid maintenance fees and assessments on the Unit. 2-ER-266 (Complaint) at ¶ 12; 1-SER-206 (Nolan Depo.), line 2 to 1-SER-207, line 4. The AOAO began negotiating and attempting to collect the unpaid fees in around 2010. *Id.*; 2-ER-267, 270-71 at ¶¶ 13, 30-31; 1-SER-148-49, ¶¶ 11-16; *see also* 2-ER-40 at ¶¶ 11 (collection efforts made by law firm Ekimoto and Morris until 2020). Porter McGuire was not involved in those collection efforts, which are immaterial to this dispute. *Id.*

On April 24, 2012, Nolan filed for Chapter 7 Bankruptcy. 2-SER-297 (Petition for Bankruptcy). As part of that process, Nolan voluntarily agreed to surrender title to the Unit to Wells Fargo. 2-SER-297, 303, 309, and 329 (Petition); 1-SER-211 (Nolan Depo.), line 16 to 1-SER-215, line 24 (admitting same). The bankruptcy was discharged on August 1, 2012. 2-SER-434. Wells Fargo declined to take title to the surrendered Unit and, as a result, Nolan regained control over the Unit and, again, began renting to generate income. 1-SER-215 (Nolan Depo.), lines 5-24; *id.* at 216, lines 6-16. Nolan admits she fell behind on maintenance fees, again, and began owing unpaid fees to the AOAO after the bankruptcy. 1-SER-216 (Nolan Depo.), lines 13-16; *id.* at 245, line 7 to 1-SER-247, line 7.

That new, outstanding balance was negotiated and challenged until, in 2018, the balance was recalculated and reset by the AOAO. 1-SER-46, line 4 to 1-SER-

49, line 4 and 1-SER-51, line 10 to 1-SER-53, line 25 (explaining AOAO credited

Nolan's account with $47,346.65 in December 2018 following a change in law

regarding late fee calculations); 1-SER-54, line 25 to 1-SER-57, line 7 (noting that

AOAO double-checked and confirmed the 2018 balance adjustment). As a result,

the negotiations and disputes about how unpaid fees were calculated between 2012

and 2018 are immaterial, here. Open Br. at 4-5 and 20-21 (identifying collection

actions and alleged accounting challenges in 2012, 2015 and 2016—by entities

*other than* PMK and outside the applicable statute of limitations—as basis for

Nolan's FDCPA claims against PMK). Nolan's new balance of unpaid fees

continued to grow after that 2018 recalculation. *See e.g.* 2-SER-489-90 (identifying

unpaid and delinquent "AOAO dues" in 2021, 2022, and 2023).

### D.     Porter McGuire's Limited Involvement and Contact with Nolan

Porter McGuire had no contact with Nolan until August 7, 2020, when it

first sent Nolan a letter regarding her unpaid fees. *See* 2-ER-280 at ¶ 74; 2-ER-40

at ¶11; 2-ER-96-97 (August 2020 letter). That limited contact ended on January 26,

2021, when, at Nolan's request, Porter McGuire sent a final letter to Nolan's

counsel regarding the unpaid fees. 2-ER-101-02. In response, Nolan retained trial

counsel and, on December 29, 2021, filed a complaint against the AOAO to initiate

the State Litigation. 1-SER-146. As noted above, Nolan admits that State

Litigation sought, in relevant part, adjudication and an accounting to clarify how

17

much Nolan owed the AOAO. 1-SER-156 at B; 1-SER-216, line 6 to 1-SER-217, line 16; 1-SER-248, line 6 to 1-SER-250, line 24.

Porter McGuire represented the AOAO in that State Litigation and, on August 19, 2022, filed the AOAO's compulsory Counterclaim for foreclosure on the Unit. 2-SER 436 (Counterclaim); 1-SER-250, lines 4-24 (confirming Counterclaim filed after Nolan sued AOAO about the unpaid fees); *see also* Haw. R. Civ. P. 13(a) (counterclaims are compulsory if they arise out of transaction or occurrence that is subject matter of opposing party's claim). It is undisputed and admitted that the Counterclaim was served on Nolan's counsel through the State of Hawaiʻi's Judiciary Electronic Filing and Service System ("JEFS"). 2-SER-485-86 (Certificate of Service); 22-SER-487-88 (confirming electronic service on Nolan's counsel); 2-ER-43 at ¶ 25 (Nolan's counsel told her about the Counterclaim).

### E.    Underlying Federal Lawsuit

On June 29, 2023, Nolan sued Porter McGuire in the underlying action, alleging that the Counterclaim (1) violated 15 U.S.C. §§ 1692e and 1692f of the FDCPA, (2) constituted an abuse of process, and (3) was actionable as an IIED. 2-ER-287-97. Nolan admits the August 2022 Counterclaim is the sole basis of her claims in this matter. 2-ER-43 (Nolan Decl.) at ¶¶ 24-26; 1-ER-7. Despite that, Nolan explained her alleged general damages—stress, anxiety, undiagnosed PTSD, etc.—started in 2006, accelerated in 2010 or 2012, and accelerated again during the

2020 COVID pandemic. 1-SER-172 (Nolan Depo.), line 13 to 1-SER-176, line 17 (also confirming Nolan never sought treatment or counseling and has no records or documents supporting her claims). The onset of Nolan's alleged damages began a decade before Porter McGuire's limited correspondence with Nolan/her counsel (from August 2020 to January 2021) and occurred outside of any applicable statute of limitations. Nolan also admitted that her knowledge of the Counterclaim is limited to what her attorneys told her, as they were served with the Counterclaim (rather than Nolan herself). 1-SER-98 (Nolan Decl.) at ¶ 25.

Discovery closed and, on August 28, 2024, Nolan filed a Motion for Partial Summary Judgment as to liability on her FDCPA claims, only. 2-ER-217-19; *see also* 1-SER-76-91 (Porter McGuire's Response to Nolan's Concise Statement of Facts) (disputing Nolan's unsupported allegations). Separately, Porter McGuire filed a Motion for Summary Judgment on all Nolan's claims. 2-SER-491-93; *see also* 1-SER-134-37 (Porter McGuire's Concise Statement of Facts); 1-SER-2-21 (Porter McGuire's Concise Statement of Facts for Reply) (disputing Nolan's unsupported factual allegations). The District Court held oral argument on December 3, 2024, and, on February 3, 2025, issued its Order granting Porter McGuire's MSJ and denying Nolan's MPSJ. 1-ER-3-20.

In its Order, the District Court confirmed Nolan: (1) admitted that, since May 2008, the Unit was used exclusively as a rental property, *id.* at 7; (2) admitted

and acknowledged through counsel that her Complaint against Porter McGuire is limited to the Counterclaim, *id.*; (3) acknowledged the Counterclaim was compulsory, *id.* at 7, 16; and (4) admitted she did not find out about the Counterclaim until her counsel told her about it, *id.* at 15. The District Court also confirmed it did not consider inadmissible hearsay that Nolan presented as to her mother's alleged intent for the Unit. 1-ER-12, n.3. Judgment was entered shortly thereafter. 1-ER-2.

Nolan filed this appeal to challenge the District Court's ruling against her and entry of summary judgment in favor of Porter McGuire on the FDCPA and IIED claims. She does not challenge summary judgment entered against her claim for abuse of process. Open. Br. at 2, n.1. Nolan also did not challenge the District Court's evidentiary ruling that testimony about Mary Nolan's alleged intent for the Unit is inadmissible hearsay or dispute the admissions she and her counsel made. 1-ER-12, n.3 (evidentiary ruling); *id.* at 7, 15, and 16 (documenting admissions, including admissions made at oral argument through counsel). Accordingly, any attempt to challenge that evidentiary ruling, as well as Nolan's documented admissions and admissions through counsel, has been waived.

## SUMMARY OF ARGUMENT

### A.   The Scope of Nolan's Claims is Narrow

Under the applicable statutes of limitations, Nolan's claims are limited to the August 2022 Counterclaim. This is consistent with Nolan's admissions below and before this Court. 2-ER-43 (Nolan Decl.) at ¶¶ 24-26; 1-ER-7 (confirming same).

### B.   The Counterclaim is Not Actionable Under the FDCPA

Under *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) and *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010), the District Court is correct that the Counterclaim is not an actionable communication under the FDCPA because it was delivered to counsel instead of Nolan.

### C.   Nolan's Unpaid Fees are Not Protected by the FDCPA

The District Court also correctly followed *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir. 2001) to determine that Nolan's unpaid fees were an unprotected commercial debt and not a consumer debt protected by the FDCPA. As required by controlling precedent, the District Court examined the transaction as a whole, including 16 years of admitted commercial use, to determine that the Unit was not acquired primarily for personal, family, or household use. 1-ER-8-11 (Order). Nolan's counterargument—that she purportedly inherited her mother's alleged desire to provide a permanent home for Dennis—was based only on inadmissible hearsay and a self-serving declaration. *Id.* at 10 n.3. That testimony was insufficient to create a genuine issue of material fact and was contradicted by

the actual use of the Unit, which was to generate income while Dennis was houseless.

### D.    Nolan Failed to Prove an Actionable Misstatement of Debt

Nolan failed to present evidence that the Counterclaim contained a material misstatement of her unpaid fees. Instead, Nolan admits she does not know and has not calculated what she owed in unpaid fees. 2-ER-43 (Nolan Decl.) at ¶¶ 24-26; 2-SER-500, 521-22 (unpaid fees "incalculable"). Nolan's professed confusion and self-serving assumptions are insufficient to meet her burden of proof.

### E.    Nolan's IIED Claim is Devoid of Legal or Factual Support

Proving a claim for IIED requires evidence of conduct so outrageous and atrocious that it is "utterly intolerable in a civilized society." *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc.,* 76 Hawai'i 454, 465 n.12, 879 P.2d 1037 n.12, 1048 (1994) (quotation omitted). Nolan offered only unsupported, self-serving assumptions that the Counterclaim contained an alleged, unquantified mathematical error regarding her admitted debt. The District Court properly found the Counterclaim was a compulsory response to the State Litigation and, as a result, Porter McGuire's conduct was lawful, expected, and well-within the bounds of decency, and that Nolan failed to show that a genuine issue of material fact exists with respect to her claim for IIED. 1-ER-14-17.

# ARGUMENT

## A.   Nolan's Claims are Narrow and Limited to the Counterclaim

FDCPA claims must be brought within one year of an alleged violation.

15 U.S.C. § 1692k(d); *Rotkiske v. Klemm*, 589 U.S. 8, 13-14, 140 S.Ct. 355, 360-61, 205 L.Ed.2d 291 (2019) (holding discovery rule does not apply to FDCPA claims and that limitations period for a FDCPA claim begins on date of the alleged violation, not the date it is discovered); *c.f.* Open Br. at 23 (arguing there is an open question of "whether the doctrine of equitable tolling applies" to Nolan's FDCPA claims (citing Ninth Circuit decisions abrogated by the 2019 Supreme Court decision in *Rotkiske*)).[4] Claims for IIED must be brought within two years of the cause of action. HRS § 657-7; *see also Kersh v. Manulife Fin. Corp*, No. 09-00049, 792 F.Supp.2d 1111, at *1123 (D. Hawaii May 31, 2011) ("A plaintiff must bring an IIED claim within two years after the claim accrues") (citing HRS § 657-7). Because Nolan filed her Complaint on June 29, 2023, the basis of her FDCPA and IIED claims had to occur on or after June 29 in 2022 and 2021, respectively. 15 U.S.C. § 1692k(d); HRS § 657-7.

---

[4] This Court should not entertain this new argument raised, for the first time, on appeal. 2-SER-535-53 (argument not raised in support of Nolan's MPSJ ); 2-SER-101-33 (argument not made against Porter McGuire's MSJ); *see Rose Court, LLC*, 119 F.4th at 688 (this Court can, but typically "will not consider arguments raised for the first time on appeal"). Nolan previously admitted the Counterclaim was the sole basis of her claims. 2-ER-43 (Nolan Decl.) at ¶¶ 24-26; 1-ER-7. Moreover, the Supreme Court's decision in *Rotkiske* supersedes the authority relied on by Nolan.

Nolan admits that the only act by Porter McGuire during *either* statute of limitations, and thus the sole basis of Nolan's FDCPA and IIED claims, is the Counterclaim Porter McGuire served on Nolan's counsel on August 19, 2022. 2-ER-283 at ¶ 81; 2-ER-43 (Nolan Decl.) at ¶¶ 24-26; 1-ER-7; *see also* 2-SER-485-86 (service on counsel). This greatly narrows the scope of the present dispute; all of the historic fee negotiations, adjustments, and corrections that occurred between 2010 and June 2021, as well as Nolan's discussion and interpretation of the AOAO's ledgers, are outside the statute of limitations period and immaterial.[5] The only document at issue for the purpose of this appeal is the Counterclaim, which is (1) not actionable under the FDCPA and (2) does not constitute an IIED.

## B. The District Court is Correct that the Counterclaim is Not an Actionable Communication Under the FDCPA

Under controlling Ninth Circuit precedent, the Counterclaim is not actionable under the FDCPA because it was served on Nolan's counsel and not upon Nolan, herself. 2-SER-485-86; 2-SER-487-88. A history of the law is helpful.

### 1. FDCPA does not apply to pleadings served on counsel

In 1995, the Supreme Court held that the "[FDCPA] applies to attorneys who 'regularly' engage in consumer-related debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct.

---

[5] The one ledger included in Nolan's Excerpts of Record (2-ER-103-18) is immaterial, as Hawaiiana created it in April 2023 and after the Counterclaim at issue.

24

1489, 1493, 131 L.Ed.2d 395 (1995). The Supreme Court determined the FDCPA did not apply a general litigation exemption for lawyers, as "litigating, at first blush, seems simply one way of collecting a debt." *Id.*, 514 U.S. at 297, 115 S.Ct. 1492. That said, this Court subsequently held and clarified that pleadings—a form of communication and, potentially, debt collection—are only actionable under Section 1692e and Section 1692f when they are sent directly to a consumer.

The first clarification occurred in 1997, when this Court expressly held that "communications directed solely to a debtor's attorney are not actionable under the [FDCPA]." *Guerrero*, 499 F.3d at 934; *see also Donohue*, 592 F.3d at 1032 (explaining *Heintz* "only addressed the question of whether the FDCPA applies to [attorney litigation activities], but *Heintz* did not address how the *identity of the recipient* of the communication impacts FDCPA liability.") (emphasis original). The reason for this holding is that the FDCPA is intended to protect unsophisticated debtors from abuse, harassment, and deceptive collection practices, which is why communications violate the FDCPA if they are likely to mislead the "least sophisticated debtor." *Guerrero*, 499 F.3d at 939. However, "[a]ttorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not." *Id.* Thus, the Ninth Circuit held that "[w]hen the recipient of the communication is solely a debtor's attorney, the FDCPA's purpose of protecting

25

unsophisticated consumers is not implicated." *Donohue*, 592 F.3d at 1032 (affirming and citing *Guerrero*, 499 F.3d at 939).

In 2010, this Court clarified that the holding in *Guerrero* also applies to pleadings served on counsel. In *Donohue*, this Court confirmed that a pleading is form of communication, but made a distinction between a pleading served on a consumer, directly, and a pleading served on a consumer's counsel. *Donohue*, 592 F.3d at 1031-32 (holding "the *identity of the recipient*" impacts FDCPA liability for communications). This distinction is consistent with the holding and reasoning in *Guerrero*; because a pleading is a form of communication, the protections and purpose of the FDCPA are not implicated when the pleading is made to and through sophisticated counsel. *Id.* at 1032. This Court applied this distinction to a pleading "personally served" on a consumer and held that the pleading was actionable under the FDCPA because "Donohue herself, *[and] not her lawyer*, was the recipient of the communication." *Id.* (emphasis added); *see also id.* at 1031-32 (concluding "a complaint *served directly on a consumer* to facilitate debt-collection efforts is a communication subject to the requirements of the [FDCPA].") (emphasis added).

The specific, emphasized language is central to this Court's distinction. Although pleadings *can* be communications subject to the FDCPA, whether a pleading *is* such a communication depends on the pleading's recipient. *Id.* If a

pleading is served directly on a consumer, it can be actionable under the FDCPA. *Id.* If the pleading is served on a consumer's counsel, however, then it is not actionable under the FDCPA. *Id.* If *all* pleadings were communications governed by the FDCPA, then there would be no need to make this distinction.

### 2. Nolan cannot circumvent and ignore controlling law

Nolan urges this Court to disregard its own precedent by claiming that a pleading, as a public record, is actually addressed to the world at large. Open Br. at 16-17. This is misguided and improper on several levels.

First, Nolan incorrectly claims that the distinction recognized in *Guerrero* only applies to hypothetical, secret communications between counsel that cannot and will not, ever, be seen by a consumer. *Id.* The communication at issue in *Guerrero*, however, was a settlement demand for a dispute that took place in Hawaiʻi. *Guerrero*, 499 F.3d at 928–29. Under the applicable rules of professional conduct, counsel was *obligated* to share and discuss the settlement demand with their (consumer) client. *id.* at 930–32, 938; *see also* Haw. R. Prof. Cond. 1.4(a)(6) (requiring lawyers in Hawaiʻi to promptly inform clients of written settlement offers). Nolan's misinterpretation of *Guerrero* also disregards that communications exchanged between counsel are, by default, owned by the client. Haw. R. Prof. Cond. 1.16(d); *id.* at Comment [10] (noting clients are entitled, with limited and inapplicable exceptions, to all documents in their lawyer's file). The hypothetical,

narrow application Nolan argues *Guerrero* should be limited to does not exist. It is also inherently inconsistent with the logic of *Guerrero* itself. *See Guerrero*, 499 F.3d at 939 (responding to dissent and explaining that, although the FDCPA applies to conduct aimed at a debtor regardless of whether he/she has retained counsel, the FDCPA's strictures no longer apply to communications when the debt collector ceases contact with the debtor and instead communicates exclusively with the attorney hired to represent the debtor).

Second, Nolan is, again, attempting a new argument that she did not brief or argue before the District Court. Her argument, now, that all pleadings, as matters of public record, are automatically directed to consumers and the world at large was not made below. *Compare* Open Br. at 16-18 (raising new argument) *with* 2-SER-535-53 (Nolan's Memo in Support of her MPSJ, which does not contain this argument) *and* 2-SER-101-33 (Opposition to Porter McGuire's MSJ, also without this argument). This Court should not entertain this late and improper attempt to broaden the scope of the appeal and the allegations in Nolan's Complaint. *Rose Court, LLC*, 119 F.4th at 688.

That said, the holding in *Donohue* is, again, instructive in that this Court would not *need* to explore distinctions between pleadings served on counsel versus pleadings served on consumers if all pleadings were, by default, presumed to be directed to the world at large. *Donohue*, 592 F.3d at 1032 (distinguishing between

pleading served directly on consumer versus pleading served on consumer's lawyer). Nor is this interpretation even relevant, as it is undisputed that the Counterclaim was *served solely and directly upon Nolan's counsel* via the State of Hawaii's electronic filing system. 2-SER-485-86 (Certificate of Service); 22-SER-487-88 (NEF); *see also* 2-ER-43 (Nolan Decl.) at ¶ 25 (Nolan confirms same). Only parties to a state court proceeding would have received affirmative notice of this filing. The fact that court records are generally public does not mean that anyone other than, in this case, Nolan's counsel was the intended recipient. And, to that point, "[t]he [FDCPA's] purposes are not served by applying its strictures to communications sent only to a debtor's attorney," which is why "when the debt collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the Act's strictures no longer apply to those communications." *Guerrero*, 499 F.3d at 938-39.

Finally, Nolan offers an unsupported accusation that the lawful, compulsory Counterclaim should be subject to the FDCPA because it allegedly prevented her from selling the Unit. Open Br. at 17-18 (claiming the Counterclaim "made sale of the Unit virtually impossible," but offering no evidentiary support for this claim). The implication is that the FDCPA should prevent Porter McGuire from filing the AOAO's compulsory Counterclaim because litigation about Nolan's admitted debt is inconvenient. *Id.* This is incorrect; the FDCPA's restrictions on communications

with consumers are to prevent confusion, not absolve admitted debts. *Donohue*, 592 F.3d at 1032. Moreover, Nolan, herself, initiated the State Litigation, which—in her words—put the world on notice of her outstanding fee dispute with the AOAO. The strict liability of the FDCPA does not, as Nolan suggests, preclude litigation or bar the AOAO from preserving its right to recover Nolan's unpaid fees with a compulsory Counterclaim.

Consistent with *Donohue*'s affirmation and clarification of *Guerrero*, the Counterclaim was not actionable under the FDCPA because Nolan's attorneys, rather than Nolan herself, received the pleading. *Donohue*, 592 F.3d at 1032; *see also* 2-ER-43 at ¶ 25 (Nolan admits her attorneys received and told her about the Counterclaim). The "least sophisticated consumer" standard does not apply to Nolan's counsel, nor do FDCPA protections apply to Porter McGuire's direct communication with them. Thus, the District Court thus correctly applied the holdings in *Donohue* and *Guerrero* in concluding that the Counterclaim Porter McGuire served on Nolan's counsel—the sole basis of Nolan's FDCPA claims—was not actionable under the FDCPA. 1-ER-13-16. The District Court's Order should be affirmed.

### C.    The District Court is Correct that FDCPA Protections Do Not Apply to Nolan's Commercial Debt

Correct application of *Donohue* and *Guerrero* is dispositive of all Nolan's FDCPA claims; whether Nolan's unpaid fees are commercial or consumer debt is

irrelevant because the Counterclaim is not actionable as a matter of law. However, the District Court also correctly applied Ninth Circuit precedent in determining that Nolan's debt, itself, is not protected by the FDCPA.

### 1. The FDCPA Only Applies to "Consumer Debts"

The term "consumer" is defined under the FDCPA as meaning: "any natural person obligated or allegedly obligated to pay any **debt**." 15 U.S.C. § 1692a(3) (emphasis added). Thus, whether a party satisfies the definition of a "consumer" under the FDCPA depends, in part, on whether they are obligated or allegedly obligated to pay a "**debt**" as defined by the FDCPA. *See, e.g., Slenk*, 236 F.3d at 1074-75; 15 U.S.C. §§ 1692a(3), 1692a(5). The FDCPA expressly states:

> The term "**debt**" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment.

15 U.S.C. 1692a(5) (emphasis added). As a result, this Court interprets the FDCPA as applying solely to "consumer debt" arising out of a transaction that is primarily for personal, family, or household purposes. *Slenk*, 236 F.3d at 1074-75

On the other hand, this Court has confirmed that the FDCPA does *not* apply to financial obligations that are primarily commercial in nature or which otherwise arise primarily from business transactions. *See, e.g., Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (FDCPA inapplicable where funds were used to

invest in a company). Thus, as a threshold matter, Nolan bears the burden of establishing that the FDCPA applies to the unpaid fees she owed to the AOAO.

### 2. The District Court properly examined the "transaction" as a whole, including the actual use of the Unit

Nolan cannot prevail where, like here, the alleged financial obligation was not incurred primarily for family, personal, or household reasons. *Bloom*, 972 F.2d at 1068. In this case, Nolan admits she used the Unit exclusively as an income-generating rental property from May 2008 onward. 1-SER-200 (Nolan Depo.) at line 17 to 1-SER-204, line 1; 1-SER-276 (Interrogatory Response) at Resp. Nos. 16-17. The other alleged use—Nolan's claim that her late brother used the Unit as his personal residence from October 2006 through "sometime" in 2008—is unsupported by documents or evidence; as detailed above, Nolan did not produce any lease agreements, tax returns, bank statements, communications, or witness testimony (other than her own self-serving hearsay statements) to support her claims. Indeed, as detailed above, Nolan offers nothing other than a repeat of the unsupported allegations in her Complaint.[6]

---

[6] The only "evidence" Nolan offered as to the nature of the debt was her self-serving declaration. 2-ER-37-46 (declaration in support of Nolan's MPSJ); 1-SER-92-100 (declaration in opposition to Porter McGuire's MSJ). Self-serving affidavits offered without supporting factual evidence are insufficient to survive summary judgment. *Hansen*, 7 F.3d at 138; *accord Fed. Trade Comm'n v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1171 (9th Cir.1997), *as amended* ("[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact") (citations omitted).

Recognizing her lack of admissible evidence, Nolan urges this Court to limit its inquiry her self-professed, allegedly-inherited intent for the Unit. Nolan argues that, "[i]t does not matter whether the Unit was used as a rental property *after* [it was acquired]" because this Court examines only the debtor's initial purpose for incurring the alleged obligation. Open Br. at 10-12 (citing *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC,* 859 Fed. Appx. 102, 103-04 (9th Cir. 2021) (unpublished), and *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988) ("*Kelly*").

Not only is Nolan's reliance on *Glawe* and *Kelly* misplaced,[7] Nolan's interpretation of the law is misleading and fundamentally wrong. To determine

---

[7] *Glawe* is an unpublished, memorandum opinion, which is not precedent within the Ninth Circuit. U.S. Ct. of App. 9th Cir. Rule 36-3(a). The holding in *Glawe* did not deviate from or change the controlling precedent of *Slenk* and *Bloom* but, rather, remanded the matter back to District Court for analysis *consistent* with requirements set forth in *Slenk. See Glawe*, 859 Fed. Appx. at 104 (instructing the district court to "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended" as required in *Slenk*, 236 F.3d at 1075).

The *Kelly* opinion was issued in 1988 and does not account for subsequent interpretations of the FDCPA presented in *Slenk* and *Bloom*. Although *Kelly* found that the purchase of a family home was, indeed, a purchase made primarily for a family purpose, the holding in *Kelly* was (1) based on case-specific facts, (2) applied the definition of consumer debt set forth in the Bankruptcy Code rather than the FDCPA, and (3) was made before this Court established the requirement in *Slenk*. The holding in *Kelly* was also based on admissible facts supported by evidence.

Nolan also, repeatedly, cites to the Sixth Circuit decision *Haddad v. Alexander, Zelmanski, Nanner & Fioritto, PLLC*, 689 F.3d 290, 294 (6th Cir. 2012). Open Br. at 10, 14. *Haddad* is neither controlling nor relevant, as it addresses Pennsylvania insurance law, not the FDCPA, and, as an out-of-circuit decision, cannot displace this Court's precedent.

whether the transaction was primarily consumer or commercial in nature, courts must "'examine the transaction as a whole,' paying particular attention to 'the purpose for which the [financial obligation] was [incurred,].'" *Slenk*, 236 F.3d at 1075 (quoting *Bloom*, 972 F.2d at 1068, and examining all facts surrounding the purchase of equipment, including how the equipment was ultimately used); *accord Glawe* (remanding because the district court *did not* examine the transaction as a whole). This Court also requires courts consider *actual use*—how the funds received or property purchased from the transaction were either spent or used. *See, e.g., Bloom*, 972 F.2d at 1068 (examining how funds were actually spent); *Slenk*, 236 F.3d at 1075 (examining how property was actually used). Where the purpose of a transaction is overwhelmingly centered around business or commercial interests, the transaction and its related financial obligations are not "primarily for personal, family, or household purposes." *Bloom*, 972 F.2d at 1068 (holding investment in a company was primarily for business rather than personal, family, or household purpose).

Thus, while courts must examine the initial intent of a party incurring a financial obligation, initial intent is not dispositive, and this Court holds that the "primary purpose" may only be determined after also considering the actual use of the funds or property in the transaction. *Slenk*, 236 F.3d at 1075-76. In fact, the Ninth Circuit explained that a review of all facts, including actual use, may

establish that the primary purpose for the transaction was different than originally intended. *Id.* (concluding facts about actual use of a backhoe purchased through and by a business proved the backhoe was used strictly for personal use, rather than for the purchasing business); *see also In re Cherrett*, 873 F.3d 1060, 1072-73 (9th Cir. 2017) (Nguyen, J., dissenting) (explaining that, in *Slenk*, the Court looked to "the actual use to which [a] backhoe was put" in concluding that its financing was consumer debt because "the backhoe was used strictly for personal use, and was never used by [the owner's company]") (quotes original).

Similarly, financial obligations that are primarily commercial in nature are not transformed into "consumer debts" merely because they support a personal, family, or household benefit. *See, e.g., Kitamura v. AOAO of Lihue Townhouse*, No. CIV. 12-00353 LEK, 2013 WL 1398058, at *5 (D. Haw. Mar. 29, 2013) ("[T]he evidence shows that the property was not used primarily for personal, family, or household purposes. Plaintiffs did not use the property as a primary residence, but intended for the property's rental income to provide a source of funding for personal expenses."); *Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007) (properties used for rental income and not residence are not for personal, family or household purpose even if income was used for retirement planning). Thus, to prove that her unpaid fees are a "consumer debt" under the FDCPA, Nolan had to establish facts

to demonstrate that the overall purpose for incurring the unpaid fees—including her well-documented *actual use*—was primarily for "personal, family, or household" reasons, rather than commercial or business-related interests. *Id.*

### 3. Nolan's failed to meet her burden of proof

Nolan, again, failed to establish there is no genuine issue of material fact that she incurred her maintenance fee obligations primarily for personal, family, or household reasons. As the District Court observed, the bulk of the "evidence" Nolan offers to show that the Unit was acquired and used for family purposes is inadmissible hearsay. 1-ER-10, n. 3; Fed. R. Evid. 801-802 (hearsay inadmissible). A trial court can only consider admissible evidence in ruling on a motion for summary judgment and the hearsay Nolan offers should not be considered. Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

Despite this unchallenged evidentiary ruling of the District Court, Nolan, now before this Court, still relies entirely on a self-serving, unsupported declaration to offer alleged, out-of-court statements to prove her allegedly-inherited intent for and use of the Unit. 2-ER-38 (Nolan Decl.) at ¶ 3 (claiming Mary purchased the Unit to be a residence for Dennis), ¶ 4 (alleging Mary wanted Nolan on title as assurance Dennis could live in the Unit), and ¶ 5 (alleging Mary sold Nolan the Unit to raise money for Nolan's sister but still Mary planned to live in the Unit during winters). Nolan's representations that she gave her mother the

loan she took out on the Unit *after* her she took title, that Dennis lived in the Unit for rent free until 2008, and that she needed Dennis to leave the Unit because he could not afford rent are all equally unsupported. Inadmissible hearsay and unsupported, self-serving testimony are insufficient to meet Nolan's burden in response to PMK's motion for summary judgment. *Mahone v. Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003) (discussing inferences); *see also Fed. Trade Comm'n,* 104 F.3d at 1171 ("[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact") (citations omitted).

Even if some portion of Nolan's testimony is considered, her admissions-against-interest overwhelmingly demonstrate that the primary purpose of the Unit was commercial rather than for consumer use. First, it is undisputed that (1) Nolan never used the Unit as her permanent residence and (2) admittedly has used the Unit, exclusively, as an income-generating rental property since at least May 2008. 1-SER-165, lines 1-9 and *id.* at 213, line 21 to 215, line 4 (confirming Nolan's residence was in Woodinville, WA); 1-SER-266 at Resp. 1 (residency in WA); 1-SER-200, line 17 to 1-SER-204, line 1 (rental use); 1-SER-276, Resp. Nos. 16-17 (same). Second, Nolan admittedly attempted to surrender title to the Unit during her 2012 bankruptcy and, when she regained the Unit, she admittedly resumed

using the Unit for income-generating purposes. 1-SER-213 (Nolan Depo.), line 17
to 1-SER-216, line 16.

Thus, Nolan's admitted, actual use confirms she used the Unit for
commercial purposes for 16 out of the 18 years she owned it. There is no evidence
before this Court that the Unit was her brother's permanent residence or that Nolan
acquired or treated it as such. Rather, Nolan's commercial use of the Unit
*prevented* Dennis from living at the Unit and her alleged, initial intent is
uncorroborated and unsupported. Nolan's delinquencies to the AOAO—especially
the debt she incurred after she regained rights and responsibilities to the Unit after
her 2012 bankruptcy—confirm that she acquired the Unit primarily for
commercial, rather than personal, family, or household, purposes. As a result, the
District Court correctly found that, based on its review of the transaction as a
whole (including actual use), Nolan's unpaid fees were (1) commercial in nature
and (2) unprotected by the FDCPA. The District Court's Order and Judgment
should be affirmed.

### D. Nolan Failed to Offer Evidence of the Alleged FDCPA Violation

Nolan's own Motion for Partial Summary Judgment was also properly
denied. It is well-settled that a plaintiff bears the burden to establish an alleged
FDCPA violation. *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir.
2018). Accordingly, Nolan had the burden to prove there was no genuine issue of

material fact as to each element of her FDCPA claim, including that (1) her unpaid fees were a consumer debt, (2) that the Counterclaim was an actionable communication, and that the Counterclaim was (4) false or misleading in a (4) material way. *Donohue*, 592 F.3d at 1033.

As detailed above, the FDCPA does not apply to the Counterclaim or to Nolan's debt. Nolan's Motion for Partial Summary Judgment was properly denied on those grounds, alone. That Nolan also failed to prove a material misstatement is another, independent basis for summary judgment in favor of Porter McGuire.

### 1. Nolan failed to establish that the AOAO's Counterclaim was materially misleading to the least sophisticated debtor

Nolan's identifies two provisions of the FDCPA as the basis for her claim: Sections 1692e and 1692f. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see also* 15 U.S.C. § 1692e(2) (prohibiting "false representation of ... the character, amount, or legal status of any debt"). Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "The collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of Section 1692f. 15 U.S.C. § 1692f(1).

Whether conduct violates Section 1692e or Section 1692f requires an objective analysis of whether "the least sophisticated debtor would likely be misled by a communication." *Donohue*, 592 F.3d at 1030 (cleaned up); *Guerrero,* 499 F.3d at 934 (same). However, not all false statements violate the FDCPA, and this Court has held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [Section] 1692e or [Section] 1692f." *Donohue*, 592 F.3d at 1033. Thus, in order to prevail on her claims under Section 1692e and 1692f, Nolan bears the burden of proving there is no genuine issue of material fact that a representation in the Counterclaim was: (1) false or misleading; and (2) materially false. *Id.*

Nolan does neither. Instead, Nolan offers a convoluted history of negotiations, challenges, and corrections to unpaid fees that took place between 2010 and 2015. Open Br. at 8-9 and 24-26 of 39. The history of pre-bankruptcy negotiations, or discussions of how late fees were calculated *before* the unpaid fees were adjusted in 2018 (and long before Porter McGuire was involved), are immaterial distractions,[8] that, if anything, evidence that Nolan never hired an

---

[8] Whether the ledgers and letters sent between 2010 and 2021 were "confusing" is immaterial, as those communications took place outside the applicable statute of limitations. Nolan's arguments that various ledgers misapplied AOAO policies and/or contain inaccurate accounting are also unsupported by affidavit or evidence. Rule LR7.5 of the Local Rules of Practice for the United States District Court for the District of Hawaiʻi. Moreover, a complete reading of the AOAO's 30(b)(6)

accountant or calculated what she actually owed in unpaid fees. In fact, Nolan made numerous representations to the District Court that, in her opinion, the balance owed was "incalculable" and that "[n]o one knows the correct balance." 2-SER-500, 521-22. This last statement is (1) consistent with Nolan's declarations and testimony that she, personally, cannot and has not calculated what she owed and (2) is fatal to Nolan's Motion for Partial Summary Judgment, as it is a clear admission that Nolan, herself, is unable to and has not established that the Counterclaim is *materially inaccurate*. Nolan also does not address how the alleged, unproven mathematical error affected her in a material way, as the debt was (1) otherwise admitted and (2) already the focus of her State Litigation. Nolan did not and cannot meet her burden of proof.

Nolan's other arguments—that "the amount demanded in the Counterclaim appears nowhere in ledger" or that her unpaid fees increased over time—are also attempts to confuse, not clarify. The proffered ledger, for example, is immaterial because it was neither created nor maintained by Porter McGuire, is not dispositive as to the amount of unpaid fees Nolan owed, and did not even *exist* when the

---

deposition does not show an admission of error, but merely reflects that (1) the witnesses could not explain certain entries without more information and (2) that the AOAO was instructed by attorneys at Ekimoto & Morris to enter certain adjustments to *correct* the ledger. *See e.g.*, 1-SER-42, lines 13-25; 1-SER-46, line 4 to 1-SER-49, line 4; 1-SER-51, line 10 to 1-SER-53, line 24; *see also* 1-SER-54, line 25 to 1-SER-57, line 7 (confirming AOAO has records documenting corrections to Nolan's unpaid fees made in 2018).

Counterclaim was filed. 2-ER-118 (ledger, by Hawaiiana and dated April 2023, cautioning that it "may not reflect all charges and payments posted to this account"); *see also* 2-ER-101 (January 2021 communication between counsel cautioning that ledger is not complete); 1-SER-73 (Kiakona Depo.) at 99:8-101:24 (explaining ledgers, in general, would not reflect unbilled legal fees, such as the fees the AOAO incurred for Porter McGuire preparing and filing the Counterclaim). In addition, as detailed above, the basis of Nolan's unsupported, speculative belief that the Counterclaim miscalculated her debt relates to negotiations and fee adjustments that took place in 2012 to 2016, without PMK, and prior to the 2018 adjustment. Open Br. at 4-5 and 20-21.

Finally, the fact that Nolan's unpaid fees increased in the two years preceding the Counterclaim does not evidence a misstatement. Instead, this reflects the fact that Nolan's debt continued to grow, especially after she stopped paying maintenance fees altogether in November 2021. 2-ER-115-16 (portion of ledger showing that Nolan accrued maintenance fees from November 2021 onward, but was not paying them); 2-SER-489 (letter from Nolan's counsel addressing and paying $9,263.90 of unpaid maintenance and late fees Nolan incurred from November 2021 through February 2023).

Nolan insists the math is off but declines to do her own. Nolan admits she owed unpaid fees and insists that the balance identified in the Counterclaim is

wrong, but offers no correction, quantification, or analysis. Nolan presumes that her alleged, yet-never-quantified error is material, even though the Counterclaim was prepared and filed *after* and *in response to* Nolan's own lawsuit for an accounting of her admitted debt.[9] Nolan's speculation and self-professed confusion is not evidence of a misstatement and is insufficient to meet her burden, especially when viewed in a light most favorable to Porter McGuire. Instead, as to her own motion for summary judgment, Nolan fails to show that there was no genuine issue of material fact about (1) whether the Counterclaim contains false or misleading statement and (2) whether that alleged misrepresentation was material. The District Court properly denied her motion for partial summary judgment and its Order and Judgment should be affirmed.

### E. Nolan's IIED Claims are Without Legal or Factual Support

The elements of an IIED claim are: (1) that the conduct allegedly causing the harm was intentional or reckless; (2) that the conduct was outrageous; and (3) that the conduct caused (4) extreme emotional distress to another. *Goran Pleho, LLC v. Lacy*, 144 Hawai'i 224, 237, 439 P.3d 176, 189 (2019) (citing *Hac v. Univ. of*

---

[9] There is no dispute that the Governing Documents authorized the AOAO to file the Counterclaim, and there is no evidence that Appellee lacked an appropriate authorization before doing so. 2-ER-266 (Complaint) at ¶ 11 (acknowledging same); 1-SER-253 (Nolan Depo.) at lines 6-21 (admitting obligation to comply with the AOAO's Bylaws); 2-SER-356, 2-SER-372-75, 2-SER-400 at Section 1(k)(1), 2-SER-402 at Art. V, Section 1, 2-SER-406 at Art. V, Section 6 (authorizing AOAO to set maintenance fees, issue assessments, and enforce and collect same).

*Hawaii*, 102 Hawai'i 92, 106–07, 73 P.3d 46, 60-61 (2003)). The Hawai'i Supreme

Court draws from the Restatement (Second) of Torts to define whether an act is

"outrageous" for the purposes of an IIED claim:

> It has not been enough that the defendant has acted with an intent
> which is tortious or even criminal, or that he has intended to inflict
> emotional distress, or even that his conduct has been characterized by
> "malice," or a degree of aggravation which would entitle the plaintiff
> to punitive damages for another tort. Liability has been found only
> where the conduct has been so outrageous in character, and so
> extreme in degree, as to go beyond all bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized
> community. Generally, the case is one in which the recitation of the
> facts to an average member of the community would arouse his
> resentment against the actor, and lead him to exclaim, "Outrageous!"

*Ross,* 76 Hawai'i at 465 n.12, 879 P.2d at 1048 n.12 (quoting *Restatement (Second)*

*of Torts* § 46 comment d). "The question whether the actions of the alleged tortfeasor

are unreasonable or outrageous is for the court in the first instance, although where

reasonable people may differ on that question it should be left to the jury." *Takaki v.*

*Allied Machinery Corp.,* 87 Hawai'i 57, 68, 951 P.2d 507, 518 (App.1998) (cleaned

up); *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008)

(same).

    In this case, Porter McGuire filed a compulsory Counterclaim to preserve

the AOAO's rights regarding Nolan's admitted debt. The Counterclaim is

consistent with law, expressly permitted by the AOAO's Declaration and Bylaws,

and was both allowed and required by the Hawai'i Rules of Civil Procedure after

Nolan sued the AOAO regarding her unpaid fees. As the District Court noted, it is difficult to imagine how Porter McGuire's legally justified conduct to represent the AOAO's acknowledged and undisputed legal rights could even be unreasonable, much less outrageous or "beyond all bounds of decency." 1-ER-19.[10] Nolan failed to meet her burden of showing a genuine issue of material fact for trial on her IIED claims.[11] The District Court's conclusion and Order is correct.

---

[10] Courts in Arizona, Connecticut, Georgia, Michigan, and Texas have also held that the act of filing suit does not constitute outrageous conduct to even *state* an IIED claim. *See Malnes v. City of Flagstaff*, 710 F. App'x 764, 765 (9th Cir. 2018) (citing *Joseph v. Markovitz*, 551 P.2d 571, 575 (Ariz. Ct. App. 1976)); *Heim v. California Fed. Bank*, 828 A.2d 129, 142 (Conn. App. Ct. 2003); *Hammer v. Slater*, 20 F.3d 1137, 1144 (11th Cir. 1994) (quoting *Rolleston v. Huie*, 400 S.E.2d 349, 351 (Ga. Ct. App. 1990)); *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 N.W.2d 830, 834 (Mich. Ct. App. 1986); *Applin v. Deutsche Bank Nat. Tr.*, Civ. No. A. H-13-2831, 2014 WL 1024006, at *6 (S.D. Tex. Mar. 17, 2014) (citations omitted).

[11] Nolan argues that this Court should allow her defunct IIED claim, regardless of whether it is legally viable, because her decade-long dispute with the AOAO allegedly caused her severe harm. Open Br. at 24. However, Nolan testified that her alleged stress (1) predated the Counterclaim by over a decade, (2) originated from actions *other than* the Counterclaim, and (3) was largely resolved when she settled her dispute with the AOAO. 1-SER-172 (Nolan Depo.), line 13 to 1-SER-176, line 17; 1-SER-98 (Nolan Decl.) at ¶ 25. That type of stress—the stress of litigation and/or foreclosure—is not actionable or recoverable under Hawai'i law. *See Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, No. CIV. 13-00669 HG-BMK, 2014 WL 2761744, at *2 (D. Haw. June 18, 2014) (unreported) (holding that common reactions to foreclosure, such as "lost sleep, constant worry, and grief from the loss of property", do not support a claim for IIED) (quoting *Velasco v. Sec. Nat. Mort. Co.*, No. CV 10-00239 DAE-KSC, 2011 WL 2117008, at *12 (D. Haw. May 24, 2011) (unreported)); *see also Velasco* 2011 WL 2117008, at *12 (finding "foreclosures happen regularly" and "reasonable men and women in civilization are often expected to endure these hardships and the anxiety that follows").

There is another, independent reason why the District Court's decision should be affirmed. As Porter McGuire argued below, "[t]he litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney [(1)] occurs in the course of the attorney's representation of an opposing party and [(2)] is conduct related to the civil action." *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 269, 151 P.3d 750 (2007); 2-SER-512-17 (raising litigation privilege argument before District Court); *see also Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) ("[W]e can affirm on any ground supported by the record, including a ground upon which the district court did not rely[.]") (internal quotation marks and citation omitted).

The litigation privilege bars claims for intentional torts, too, with the exception of fraud, abuse of process, malicious prosecution, and acts of malice. *Kahala Royal Corp.*, 113 Hawai'i at 266-71, 151 P.3d at 747-52 (focusing on whether attorney defendants allegedly acted outside the scope of the attorney-client relationship, with malice, or for personal gain or with ill will towards the opposing party). Accordingly, and subject to those exceptions, the Litigation Privilege applies to all conduct by an attorney during the litigation process. *Id.*, 113 Hawai'i at 266-71, 151 P.3d at 747-52; *Isobe v. Sakatani*, 127 Hawai'i 368, 384, 279 P.3d 33, 49 (Ct. App. 2012).

46

Prior to Nolan's lawsuit, the District Court for the District of Hawaiʻi, applying Hawaiʻi law, rejected claims for IIED that were based on valid lawsuits to foreclose upon unpaid condo association fees. *Baham*, 2014 WL 2761744 at *21-22. *Velasco*, 2011 WL 2117008, at *11-12. In *Baham*, for example, a plaintiff sued a defendant condominium association for IIED allegedly caused by a lawsuit to foreclose upon unpaid fees. *Baham*, 2014 WL 2761744 at *21-22. The court ultimately dismissed Baham's IIED claims because the association's alleged conduct in seeking a permitted foreclosure was not sufficiently outrageous and Baham failed to allege sufficient emotional distress. *Id.* In addition, the plaintiff's alleged reaction to foreclosure, such as lost sleep, constant worry, and grief from the loss of property, did not support a claim for IIED. *Baham*, 2014 WL 2761744, at *22; *see also Velasco*, 2011 WL 2117008, at *12 (finding "foreclosures happen regularly" and "reasonable men and women in civilization are often expected to endure these hardships and the anxiety that follows").

Although *Baham* and *Velasco* dealt with the sufficiency of a pleading rather than the current, higher standard applicable to summary judgment, they are still instructive as to why Nolan cannot meet her burden of proof for her IIED claims. First, as in *Baham*, Nolan does not deny or dispute that she owed maintenance fees on the Unit. *See* 2-ER-266 at ¶ 12 (Nolan admits she owed unpaid fees in her Complaint). Instead, Nolan admits she had an obligation to pay monthly fees on the

Unit, admits she fell behind in her payments, and initiated the State Litigation to seek judicial determination of how much she owed. As in *Baham*, there is no dispute that the Counterclaim was warranted and appropriate because Nolan admits she owed a debt and because the compulsory Counterclaim is expressly authorized by Hawaiʻi law. Haw. R. Civ. P. 13(a). The Counterclaim was a valid, lawful pursuit of the AOAO's legal rights prompted by and related to the lawsuit Nolan filed against Porter McGuire's client. Thus, as in *Baham*, Nolan fails to identify any special circumstances in the foreclosure Counterclaim that would support a claim for IIED.

Moreover, in the proceeding below, Nolan did not produce even a scintilla of evidence that Porter McGuire's alleged conduct—filing a Counterclaim with an alleged mathematical error—caused the type of extreme emotional distress that can give rise to a valid claim for IIED. *See Baham*, 2014 WL 2761744, at *21. Instead, Nolan offered only conclusory, unsupported, and self-serving allegations and admitted the stress, anxiety, and other alleged conditions began 13 years *before* the Counterclaim. 1-SER-171, line 4 to 1-SER-173, line 16, 1-SER-174, line 1 to 1-SER-176, line 17; *see also* 1-SER-171, line 25 to 1-SER-172, line 1 (no counseling or treatment sought); 1-SER-229, line 9 to 1-SER-232, line 13 (Nolan's anxiety and stress started in 2009 and was relieved/went down after she settled the State Litigation). Lost sleep, constant worry, and grief associated with the potential loss of property in a foreclosure or the stress of litigation do not support a claim for

IIED. *Baham*, 2014 WL 2761744, at *21; *Velasco*, 2011 WL 2117008, at *12. In addition, even if Nolan had proof that Counterclaim contained a mathematical error (she does not), that would not convert a valid and lawful pleading into an "outrageous" action exceeding all bounds of decency. Although the District Court did not address litigation privilege in its Order, it presents another basis to affirm the District Court's Order and Judgment.

## CONCLUSION

The District Court's ruling was correct on all counts. Nolan has not and cannot meet her burden of proof as to her FDCPA claims because (1) the Counterclaim Porter McGuire served on Nolan's counsel was not an actionable communication, (2) Nolan's unpaid fees were commercial in nature and not a protected consumer debt, and (3) Nolan failed to show any genuine issue of material fact as to whether the Counterclaim contained any material misstatement. Nolan's tort claim for intentional infliction of emotional distress is similarly unsupported and also failed as a matter of law. The Order and Judgment of the District Court should be affirmed and Nolan's request for attorney's fees and costs should be denied.

DATED:  Honolulu, Hawaii, July 23, 2025.

/s/ David J. Hoftiezer
DEIRDRE MARIE-IHA
DAVID J. HOFTIEZER

Attorneys for Defendant-Appelle
PORTER MCGUIRE KIAKONA, LLP

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number** 25-1357

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _/s/ David J. Hoftiezer_ **Date** June 23, 2025

**Form 17** *New 12/01/18*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number** 25-1357

I am the attorney or self-represented party.

**This brief contains** <u>12,314</u> **words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ David J. Hoftiezer* **Date** June 23, 2025